861 So.2d 187 (2003)
STATE of Louisiana
v.
Robert "Bob" ODOM.
No. 2002 KA 2698.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
Writ Denied October 17, 2003.
*188 Doug Moreau, District Attorney, Baton Rouge by Sandra Ribes, Mark Pethke, Assistant District Attorneys, Counsel for Appellant State of Louisiana.
Mary Olive Pierson, Karl Koch, Baton Rouge, Counsel for Defendant/Appellee Robert "Bob" Odom.
Before: KUHN, DOWNING, and GAIDRY, JJ.
KUHN, J.
Defendant, Robert "Bob" Odom, the Commissioner of the Louisiana Department of Agriculture and Forestry (Department), was indicted by a grand jury and charged with 21 counts of various felony offenses including public bribery, conspiracy to commit public bribery, felony theft, conspiracy to commit felony theft, extortion, malfeasance in office, filing or maintaining *189 false public records, money laundering and conspiracy to commit money laundering. The state subsequently dismissed Counts 4, 5, 9, 10, 12, 13, 14, 15, 16, 17, and 21. The background and facts of the case are stated in State v. Odom, 02-2404 (La.App. 1st Cir.06/27/03), 861 So.2d 202, also decided this date. In this case, the state appeals the December 5, 2002, and December 20, 2002 trial court rulings granting the defendant's motions to quash the entirety or portions of Counts 1, 2, 3, 6, 7, 8, 11, and 18.
For the reasons that follow, we reverse that portion of the trial court's December 5, 2002 ruling that quashes any allegations in the bill of particulars involving Tommy Roshto from 1987 through 1992. Otherwise, we affirm the December 5, 2002 and the December 20, 2002 rulings regarding defendant's motions to quash.
"Including but not limited to" language of Counts 1, 2, 3, and 18
On December 20, 2002, the trial court ruled that the "including, but not limited to" language in Counts 1, 2, 3, and 18 of the indictment was quashed. In Count 1, defendant is charged with conspiracy to commit public bribery by accepting "directly or indirectly, anything of apparent value, including but not limited to cash payments, and a condominium ...." In Count 2, defendant is charged with accepting "directly or indirectly, anything of apparent present or prospective value, including but not limited to cash payments from Tommy Roshto ...." In Count 3, defendant is charged with accepting "directly or indirectly anything of apparent present or prospective value, including, but not limited to a condominium disguised as a sale from Lehman Williamson ...." In Count 18, defendant is charged with filing or maintaining false records by filing state tax returns from August 20, 1998, through August 20, 2002, containing false statements, "including but not limited to failing to report income from his campaign, hunting club expenses, a truck for his son, and other personal expenses paid for by his campaign."
The state's bill of particulars contains over 10 pages describing the conduct pertaining to Counts 1, 2, and 3. As to Count 18, the bill of particulars contains over 4 pages describing the conduct listed in the indictment.[1] The state argues that, since the bill of particulars made defendant fully aware of the nature of the charges, the trial court was incorrect in quashing the "including but not limited to" language. Defendant argues: 1) the language allows the charge to be "openended" and is not a "definite" statement of the facts constituting the offenses in the indictment, 2) the court will not be able to determine whether evidence is relevant, 3) the state will be able to change the charge and he is unable to prepare a defense because he must wait until trial to learn what other conduct may be prosecuted. Defendant further contends he will be prejudiced when the jury hears the vague language of the indictment.
We find no error in the trial court's ruling quashing the "including but not limited to" language. La.Code Crim P. art. 464 requires that the indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. The challenged language would allow the state to submit proof as to conduct that has not been specified in either the indictment or the bill of particulars.[2] *190 Such action would undermine the requirement of conciseness in the indictment and negate the reason for the bill of particulars. Unnecessary allegations in an indictment may be disregarded as surplusage. La.Code Crim. P. art. 486. Thus, we conclude that the trial court did not abuse its discretion in quashing the "including but not limited to" language of Counts 1, 2, 3, and 18 of the indictment.
This argument lacks merit.

Count 2
Count 2 charges defendant with public bribery by receiving bribes from Tommy Roshto "[f]rom on or about 1985 continuing through December 1992" to influence the granting of warehouse food storage contracts with the Department.
The state filed several answers to defendant's motion for a bill of particulars. In the first answer, the state alleges that defendant's involvement in the conspiracy began in 1985 and continued into July 2002, and that Tommy Roshto was one of the persons in the conspiracy. The answer further states that Roshto gave a Department employee, who was responsible for transferring commodities to warehouses, a case of Jack Daniel's liquor and cash for sending more food to Roshto's warehouse. No date is alleged for these acts. The bill of particulars further indicates that in 1985, Tommy Roshto's father, Roy Roshto, received a payment for the use of his warehouse that was higher than his original low bid. Alleged cash kickbacks were paid to defendant from Roy Roshto through another person during the years of 1988 and 1989. The bill of particulars also states that on two occasions, Tommy brought the cash directly to defendant. From 1991 through 1994, after his father died, Tommy allegedly agreed to make monthly payments indirectly to defendant. Additionally, the state alleges that in December of 1992, Tommy Roshto gave bribes to defendant in Las Vegas in the form of cash and a check. The list of political contributions to defendant's campaign from warehouse owners shows that $5,000.00 was contributed by Tommy Roshto to defendant on September 8, 1987.
Defendant filed a motion to recuse the district attorney based upon the fact that he had been the judge and rendered a judgment in a 1985 civil lawsuit involving some of the same events that serve as the basis for the bribery charges. The next day the state filed a revised bill of particulars amending the beginning year of defendant's involvement in the conspiracy to 1987. Defendant alleges that the state took this action to avoid an adverse ruling on the motion to recuse. Subsequently, the trial judge denied the motion to recuse the district attorney. The state filed three more revised answers to the bill of particulars, with the final answer filed on November 8, 2002.
On December 5, 2002, the trial court issued a ruling on defendant's motions to quash and stated that the time period subject to prosecution for the offense in Count 2 was from 1987 through December 1992. The court also quashed "all allegations and particulars" except for a list of 10 specific contributions from warehouse owners to the Odom campaign from August 24, 1987, through December 11, 1992.[3]
*191 The state argues that the December 5 ruling granting the motion to quash amounts to a prohibited pre-trial motion in limine excluding evidence, that the ruling prevents the admission of particular evidence at trial and that the ruling conflicts with established law that rulings on relevancy should be made during the trial. The state contends that the evidence pertaining to the quashed portions of the counts is, nevertheless, admissible under La.Code Evid. art. 404(B)(1) because it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Defendant contends that the bill of particulars amended the time period in the indictment to criminal conduct beginning in 1987, not 1985, as alleged in the indictment, and that the ruling quashing a portion of the contribution list merely conforms the list to that time period. Defendant further argues that the motion to quash is not used to exclude evidence and does not present the issue of admissibility of evidence.
As stated above, La.Code Crim. P. art. 464 provides that an indictment shall set forth the essential facts constituting the offense charged. The trial court may require the district attorney to furnish a bill of particulars setting forth more specifically the nature and cause of the charge against the defendant. If it appears from the bill of particulars furnished under La. Code Crim. P. art. 484, together with any particulars appearing in the indictment, that the offense charged in the indictment was not committed, or that the defendant did not commit it, or that there is a ground for quashing the indictment, the court may on its own motion, and on motion of the defendant shall, order that the indictment be quashed unless the defect is cured. La.Code Crim. P. art. 485. An appellate court reviews such a ruling for abuse of discretion. See State v. Atkins, 360 So.2d 1341, 1344 (La.1978), cert. denied, 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). A motion to quash may be based on the ground that "[t]he indictment fails to charge an offense which is punishable under a valid statute." La.Code Crim. P. art. 532(1).
A bill of particulars ordinarily is not a part of an indictment or information nor a substitute, amendment or supplement thereto. 42 C.J.S. Indictments and Informations § 140 p. 465. Additionally, the bill of particulars "neither strengthens nor weakens an indictment or information...[and] cannot change the offense charged or in any way aid an indictment fundamentally bad." 42 C.J.S. Indictments and Informations § 140 p. 465. The prosecution is confined in its proof to the items in the bill of particulars. The state may overcome this limitation by moving to amend the statement of particulars, but bears the burden to demonstrate that defendant will not suffer prejudice as a result of the amendment. If defendant waits until the close of arguments or the trial, his right to object that the bill of particulars limits the scope of the evidence may be waived. 42 C.J.S. Indictments and Informations § 140 p. 466.
In the instant case, Count 2 of the indictment charges defendant with accepting payments from Tommy Roshto to influence the granting of food storage warehouse contracts with the Department "[f]rom on or about 1985 continuing through December 1992." Herein, the state's bill of particulars contains over ten pages, which address Counts 1, 2, and 3 collectively. The bill of particulars states that defendant's "involvement in the conspiracy began in 1987 and continued into July 2002" and that defendant conspired with warehouse owners "to manipulate the process for warehouse food storage ...."
*192 The particulars further allege that in exchange for the award of contracts, these owners paid bribes to defendant in the form of direct payments, campaign contributions and a condominium given to defendant's daughter. The state submits a list of warehouse owners' campaign contributions to defendant from November 1985 through September 1999. The list indicates the amounts of the campaign contributions, the names of the persons or companies making the contribution and the dates of the contributions. The state contends that the contributions are "acts in furtherance and some are bribes."
When the indictment and bill of particulars are read in conjunction with the trial court's December 5 and December 20 rulings, the remaining allegations of Count 2 charge that defendant accepted campaign contributions from Tommy Roshto from 1987 through December 1992 with the intent to influence the award of warehouse food storage contracts. The trial judge's ruling of December 5 quashed "all allegations and particulars" except for 10 specific items on the contribution list from the date of August 24, 1987, through December 11, 1992. We note that only one of these contributions, one made on September 8, 1987, is listed as being from Tommy Roshto.
The trial court's ruling limiting the charged conduct to that involving Roshto between 1987 and 1992 is correct. Although the indictment lists the period in Count 2 as beginning in 1985, a reading of the bill of particulars shows that the conduct charged in Count 2 (bribes from Roshto) began in 1987. There are no allegations as to conduct related to Tommy Roshto in 1985 or 1986. While the bill of particulars may confine the state's proof at trial to the dates listed therein, it cannot change the offense charged or detract from it. The trial court, in considering the motion to quash the indictment, must construe those facts set out in the bill of particulars to be true and determine whether or not, if proved, they constitute the crime charged. State v. Bessar, 213 La. 299, 310, 34 So.2d 785, 789 (1948). See also State v. Picou, 236 La. 421, 428, 107 So.2d 691, 693-694 (1958).
In this instance, the bill of particulars is not amending or limiting the indictment; rather, Count 2 of the indictment read in conjunction with the bill of particulars fails to charge an offense occurring in 1985 and 1986. Additionally, the time period subject to prosecution can run only through December 1992, the date set forth in the indictment. The actual charge has not been extended to include conduct that may have occurred after December 1992. The portion of the trial court's December 5 ruling limiting Count 2 to the time period from 1987 through 1992 is affirmed.
The second part of the ruling quashes "all allegations and particulars" except for 10 specific items on the campaign contribution list from 1987 through 1992. However, the bill of particulars specifically alleges bribes paid by Roshto within the pertinent time period that are not included in the campaign contribution list. These include allegations of bribes by Roshto in the form of "lobbying fees" to Lehman Williamson and 1992 campaign contributions of $5,000 in cash and a check for $2,500 made in Las Vegas. Because these allegations were within the pertinent time period and consisted of alleged payments from Roshto, the trial court erred in limiting the allegations of the bill of particulars in Count 2 to the ten specific items in the campaign contribution list. For these reasons, we reverse the trial court's December 5, 2002 ruling as to that portion which quashes any allegations in the bill of particulars involving Roshto from 1987 through 1992.

*193 Count 3
Count 3 of the indictment charges that defendant committed public bribery in 1989 by accepting "directly or indirectly anything of apparent present or prospective value, including, but not limited to a condominium disguised as a sale from Lehman Williamson," with the intent to influence the award of warehouse food storage contracts. The specific allegations in the state's final bill of particulars as to Count 3 are that Williamson gave defendant's daughter a $55,000.00 condominium located in Baton Rouge as a kickback in 1989.
In the December 5 ruling, the trial court ruled that as to Count 3, the charged conduct occurred in 1989 and was not limited to a condominium. The trial court quashed the entire list of the campaign contributions from 1985 through 2000. On December 20, the trial court issued the ruling quashing the language "including but not limited to" in Counts 1, 2, 3, and 18. Thus, the effect of the two rulings is to limit the charge in Count 3 to conduct involving a bribe or bribes in the form of a disguised sale of a condominium from Lehman Williamson in 1989.
The state challenges the trial court's action of quashing the entire list of Odom Campaign Contributions from 1985 through 2000 as to Count 3. The state again argues that the ruling was a prohibited pre-trial ruling excluding evidence. As in the prior discussion of Count 2 and for the same general reasons, we reject the state's arguments. The indictment charged the defendant with conduct that occurred during 1989. The bill of particulars does not include any other allegations involving Williamson that occurred in 1989. Since the indictment pertains to a disguised sale of a condominium in 1989 and none of the listed campaign contributions occurred in 1989 or involved a condominium, the entire list of campaign contributions was properly quashed as to Count 3. The state's argument as to the rulings regarding Count 3 lacks merit.

Counts 6, 7, 8, and 11
Count 6 charges defendant with conspiracy to commit felony theft. Counts 7, 8, and 11 charge defendant with felony theft by the misappropriation of state money by the misuse of the Department airplane and airplane pilots and the use of the services of Department employees, equipment and items, such as pine seedlings, with the intent to permanently deprive the state of the money, the value of which is over $500.00.
The pertinent part of the bill of particulars related to Count 6 alleges that defendant conspired to give Department employees pay increases, promotions, leave time, and other benefits in exchange for their work on defendant's church and his son's house during their regular work hours. The state further alleges that defendant conspired to pay higher salaries to employees who worked on his campaign. Another part of Count 6 pertains to allegations that defendant conspired to use a Department employee during her regular work hours to perform work on defendant's personal projects by ordering supplies, handling bills, and receiving bids. The state further alleges that defendant hired the state veterinarian to write college papers for defendant's son during the employee's regular working hours. As part of the conspiracy, the state also alleges in subsection IV of Count 6 of the bill of particulars that defendant used Department employees during work hours and Department equipment for his personal projects at his church, hunting camp, farm, and children's houses.
As to Count 7, the state alleges in the bill of particulars that defendant misappropriated state funds by the personal use of the Department airplane and the airplane *194 pilot, a Department employee. The bill of particulars related to Count 8 alleges defendant's use of Department employees, equipment and assets for work on his children's houses. This portion of the bill of particulars references the allegations under Count 6 pertaining to the use of Department employees. The bill of particulars, with respect to Count 11, alleges that defendant used Department employees and equipment to complete site preparation work and plant pine tree seedlings on his personal property. Additional allegations pertain to defendant's overdue underpayment on Department invoices for the pine seedlings.
As discussed in State v. Odom, 02-2404 (La.App. 1st Cir.06/27/03), 861 So.2d 202, also decided this date, the trial court's ruling on November 8 granted the motion to quash "to the extent that the allegations in 6, 7, 8, and 11 are based upon [the theft of] employee services." Specifically, the trial court stated that any reference in Count 7 to the theft of the services of the Department's airplane pilot was quashed. The motion was also granted as to the allegations of the "use of personnel" in Count 8. In Count 11, the portion alleging the use of employees' labor was quashed; any allegations of use of equipment were not quashed. The trial court further ordered that if the state intends to assert any other crime in Count 11 "involving equipment," the state was to amend the bill of particulars 4:30 p.m. on that day; otherwise, the entire count was to be quashed. It does not appear from the record that this amendment was ever made or that the entire count was ever quashed. Thus, at the time of the ruling on December 20, the remaining portions of these counts involved the use of a Department airplane, equipment and other items; not the services of employees.
On December 20, the trial court quashed part IV of the bill of particulars of Count 6. The ruling quashed Counts 7 and 8, including the bill of particulars, in their entirety for the failure to state a crime under Louisiana law. The court further quashed "all portions of [Count 11], and all portions of the final revised [b]ill of [p]articulars, except allegations pertaining to pine seedlings." Thus, the only charge remaining after December 20 was the allegation in Count 11 pertaining to the misappropriation of the value of the pine seedlings with the intent to permanently deprive.
Herein, the state argues that the court incorrectly ruled that the indictment fails to charge an offense punishable under a Louisiana statute. The state contends that the indictment alleges that defendant stole money from the State of Louisiana with the intent to deprive the state permanently of that money and that the bill of particulars details the way in which defendant stole the money. Addressing defendant's argument that he is authorized to use Department equipment and the airplane, the state contends that this argument pertains to the defense on the merits and may not be raised in a motion to quash.
Defendant counters that the bill of particulars only alleges the personal use or misuse of Department equipment and assets, that he is not charged with unauthorized use of a movable, and that there is no allegation that he intended to or actually permanently deprived the Department of any items, a necessary element for the theft offense. We agree.
The Official Revision Comment to La. Code Crim. P. art. 532, Ground (5), states in pertinent part:
[T]here is no practical justification for going to trial upon an indictment in a case where the state has filed a bill of *195 particulars showing that the offense charged was not committed, that the offense was not committed by the defendant, or that the time limitations have run. This is a situation that was not provided for in the 1928 Louisiana Code of Criminal Procedure. However, the Louisiana Supreme Court, in State v. Masino, 214 La. 744, 38 So.2d 622 (1949), broadly interpreted the motion to quash to afford relief where insufficiency of the charge was brought out in the bill of particulars. Art. 485 covers any case where the bill of particulars shows an affirmative defense to the crime. Under Art. 485, such an indictment is to be quashed unless the defect is cured by another bill of particulars.
As set forth above, in considering a motion to quash the indictment, the trial court considers the facts stated in the bill of particulars as true and determines whether or not, if proved, they constitute the crime charged. State v. Bessar, 213 La. at 310, 34 So.2d at 789.
La. R.S. 14:67 defines the offense of theft, in pertinent part:
Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
Thus, an essential element of the crime of theft is a specific intent to permanently deprive the victim of his property. State v. Albert, 96-1991, p. 9 (La.App. 1st Cir.6/20/97), 697 So.2d 1355, 1362.
Herein, the indictment alleges that defendant had the intent to permanently deprive the state of its money, but also alleges these thefts occurred by the use or misuse of equipment. The bill of particulars elaborates on the allegations, but continues to allege that the crimes were committed by the use of equipment for defendant's personal benefit. Thus, except for the theft of pine seedlings in Count 11, there are no allegations that indicate that defendant "took" Department equipment or items with the intent to permanently deprive the state of its property. The indictment, when considered with the bill of particulars, discloses a lack of the essential element (intent to permanently deprive) of the crime of theft with which this accused was charged. Therefore, regarding Counts 6, 7, 8, and 11, the trial court's ruling was correct and the state's argument lacks merit.

DECREE
For these reasons, the portion of the trial court's December 5, 2002 ruling that quashes any allegations in the bill of particulars involving Roshto from 1987 through 1992 is reversed; otherwise, the December 5, 2002 ruling is affirmed. Additionally, the December 20, 2002 ruling is affirmed.
DECEMBER 5, 2002 RULING REVERSED IN PART AND AFFIRMED IN PART; DECEMBER 20, 2002 RULING AFFIRMED.
NOTES
[1] The bill of particulars also alleges that defendant filed false federal tax returns, but on November 8, 2002, the trial court granted defendant's motion to quash any reference to federal tax returns. The state has not appealed that ruling.
[2] Although the bill of particulars addressing Count 18 delineates defendant's failure to report rental income received from Allen Morris Fugler, Jr. during the time period addressed in Count 18 (August 1998 through August 2002), we note that the indictment does not list "failure to report rental income" in Count 18. Our ruling herein does not preclude the State from seeking to amend Count 18 as to these particular allegations.
[3] The court also rendered rulings pertaining to Counts 3, 6, 7, 8, and 11, which are addressed in this appeal.